MILLER, Respondent, vs. STANICH, Appellant.

*March 6—April 1, 1930.*
*October 18—December 9, 1930.*

*Walter Schinz, Jr.,* attorney, and *Joseph F. Schoendorf* of counsel, both of Milwaukee, for the appellant.

For the respondent there was a brief by *Hugo Trost* of Milwaukee, attorney, and *William R. McCaul* of Tomah of counsel, and oral argument by *Mr. McCaul.*

The following opinions were filed April 1, 1930:

FRITZ, J. Plaintiff, engaged in the wholesale fruit and cold-storage business at Marshfield, Wisconsin, acquired property located in Milwaukee which was occupied by the defendant under a lease for a five-year term commencing on June 6, 1922, with provision for extension and renewal for a further five-year term, at the lessee's option, providing he gave thirty days' notice of such intention. On February 14, 1927, Joseph A. Fleckenstein, who collected the rents as agent for plaintiff, was notified by Joseph F. Schoendorf, defendant's attorney, that defendant desired a new lease for the further term of five years. On February 15, 1927, Schoendorf prepared and mailed to Fleckenstein two copies of a proposed lease for those five years, with a clause again giving the defendant an option for an extension for an additional five-year term. Fleckenstein, without consulting plaintiff, notified Schoendorf that he did not believe that plaintiff would give defendant another option for an additional five-year term. Thereupon Schoendorf prepared and mailed two copies of another lease for the five-year term, but without any option for a future renewal. Fleckenstein sent all of the copies to plaintiff during February, 1927. As plaintiff could not read the English language, his stenographer or one of his two adult sons, who were in business with him, read the leases to

him, and he then discovered that one set contained the clause for another five-year renewal option, and that the other set did not contain such clause.

On March 15, 1927, defendant caused a notice of his intention to take advantage of the extension privilege to be served on the former owner and lessor and on Fleckenstein. On May 21, 1927, defendant also caused such a notice to be served on plaintiff. Thereupon plaintiff consulted his attorney at Wisconsin Rapids, and was advised that defendant was entitled to the first extension of five years. However, inadvertently, plaintiff's attorney inserted the date "May 24" in the blank spaces left for the date in the two copies which had the clause that granted defendant a new option for another five-year extension. Plaintiff returned to Marshfield, and there signed the two copies in which his attorney had inserted "May 24," and sent them to defendant, who signed them and returned one copy to plaintiff on June 1, 1927. There was no misrepresentation, concealment, or fraud in any respect on the part of either party or their respective agents or attorneys. The court found that the plaintiff intended to make a new lease for only the first extension of five years, without giving defendant any new option for a further extension; that plaintiff, on discovering his error, promptly demanded the cancellation of the provision for the second extension; and that upon defendant's refusal to consent to such cancellation, plaintiff promptly commenced this action. On the other hand, the court also found that the defendant intended to obtain an option for an additional term of five years, but, failing in that, he intended to secure a new lease for merely the five-year extension under the original lease. Upon those facts the court concluded that plaintiff was entitled to judgment "canceling and rescinding the provision contained in said lease purporting to grant an option for an additional

five-year term;" and it was provided in the judgment that the lease dated May 24, 1927, "be and the same is hereby reformed by canceling and striking out" the provision for the second renewal.

Although plaintiff may have made a mistake in signing and sending to defendant the copies of the lease which contained the provision giving defendant an option for a further renewal, nothing had occurred because of which the defendant had reason to believe that plaintiff did not intend to agree to that provision, or that plaintiff had made a mistake. Defendant, in good faith, had submitted two forms. Without being misled by any trick or artifice on the part of any one, plaintiff signed and sent the two copies, containing the clause for another option, to defendant for his signature. When defendant also signed those copies he was entitled to assume that the minds of the parties had met as to all terms embodied in the signed instruments, and that the plaintiff, by signing, had evidenced his intention to agree to all of those terms. Nothing had been done by plaintiff, of which defendant had knowledge, that indicated an intention on plaintiff's part not to consent to the option for the additional extension. Nothing had occurred which can be said to evidence a meeting of the minds of the parties to another contract, which plaintiff is now entitled by reformation to have expressed in the lease which he voluntarily signed. There was no mutual mistake. At best it was merely a unilateral mistake, without any fraud on the part of the defendant. Under the circumstances there was no ground for reformation.

"In order to reform a contract on the ground of mistake, the general rule is that the mistake must be mutual, or mistake on one side and fraud on the other." *Chicago, St. P., M. & O. R. Co. v. Bystrom,* 165 Wis. 125, 133, 161 N. W. 358; 1 Black on Rescission and Cancellation (2d ed.) pp. 396, 398, 399; *Id.* § 131, pp. 402–405.

As was said in *Grant Marble Co. v. Abbot,* 142 Wis. 279, 287, 124 N. W. 264:

"The minds of the parties met upon this contract, hence there is no ground for reformation. There was no mutual mistake. The parties to the contract made the contract they intended to make. Even if a mistake were made, it is established that it was the mistake of Mr. Grant, president of plaintiff; hence was not mutual. To allow reformation in this case would be to justify the court in making a contract for the parties which they themselves did not make. This the court cannot do. The plaintiff must show that the minds of the parties met upon the contract which it seeks to establish."

Likewise, in *Jentzsch v. Roenfanz,* 185 Wis. 189, 193, 195, 201 N. W. 504, this court said:

"The determination of this case must rest upon the question of whether or not there was a mutual mistake. A mistake, in order to be mutual, means one reciprocal and common to both parties, where each alike labors under the misconception in respect to the terms of the written instrument. *Botsford v. McLean,* 45 Barb. 478, 481." (Page 193.)

"While a mistake of one of the parties in a proper case may be grounds for rescission or cancellation, in order that there may be a reformation the mistake must be mutual. In other words, the court cannot rewrite the contract which the parties have made so as to express an agreement which the parties had not entered into." (Page 195.)

The mistake in the case at bar was in relation to but one clause or detail of the lease. It did not go to the entire contract as in the case of *Chicago, St. P., M. & O. R. Co. v. Bystrom, supra.* Consequently, in this case plaintiff could not have rescission of the entire contract. However, even if he sought such rescission, to entitle him to relief because of his mistake he would have to establish that there was fraud on defendant's part, or, at least, that he knew that plaintiff was laboring under a mistake (*Grant Marble Co. v.*

*Abbot, supra,* p. 289) ; or, in the case of a unilateral contract, such as a deed, that it was without consideration and that the mistake was excusable. (*Chicago, St. P., M. & O. R. Co. v. Bystrom, supra,* p. 133).

Respondent also contends that the provision granting the new option for a further five-year term is subject to cancellation because there was no consideration for such grant, in excess of defendant's rights under the original lease. However, in so far as such grant constituted a modification of the original lease, no new consideration was necessary. *Foley v. Marsch,* 162 Wis. 25, 30, 154 N. W. 982; *Schoblasky v. Rayworth,* 139 Wis. 115, 117, 120 N. W. 822. The consideration for the original, executory contract is deemed imported into the modified contract, and such new contract becomes binding without any new consideration. *Lynch v. Henry,* 75 Wis. 631, 634, 44 N. W. 837.

For the reasons stated, the court erred in decreeing reformation of the lease dated May 24, 1927.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.

FOWLER, J. I feel that I must record a dissent. The case is so simple that to my mind the mere statement of it proves the decision of the court wrong. The plaintiff executed to defendant a lease in writing containing an option to defendant for a five-year extension. The premises are in Milwaukee. The plaintiff resides at Marshfield and the defendant in Milwaukee. Near the end of the term the defendant submitted to plaintiff's agent in Milwaukee a new lease in the same terms as the original including an option for another five-year extension and asked him to procure plaintiff's signature to it. The plaintiff's agent answered that he did not think the plaintiff would execute a lease with the extension clause. The defendant thereupon submitted to the agent another lease like the original without the extension clause and asked that he get the plaintiff to execute

and return one or the other of the leases. The plaintiff claims, and the court found, that he by mistake signed the lease containing the option for extension and sent it to the defendant instead of the one without such option which he intended to sign and deliver. On discovering the mistake plaintiff asked defendant to return the lease he had and accept the one without the option for extension. The defendant refused to do so. The plaintiff, promptly and before defendant had taken any steps whatever in reliance upon the provision for a five-year extension, comes into a court of equity and asks relief on the ground of his mistake.

The defendant gave timely and proper notice to entitle him to a five-year extension of his original lease. This he was entitled to. He was not entitled to anything more. No extra rental or other consideration for another five-year extension was agreed to or given. The defendant was not induced to accept the lease signed by the plaintiff and enter into his covenants therein contained because of the inclusion in the lease of the clause for the additional extension. He would have accepted the other lease had that lease been returned to him. It is true that when the defendant signed the lease returned by plaintiff he understood that the plaintiff had signed it advisedly and had thereby agreed to the additional extension. But the plaintiff had not so agreed. There was thus no meeting of the minds of the parties in respect to the extension. No such agreement was reached as the signed lease evidences.

No plainer case for relief from mistake was ever brought in a court of equity. It is true, as stated in the opinion of the court, that equity does not reform instruments for mistake unless the mistake is mutual, and that the mistake here involved is not mutual but unilateral. But equity rescinds written instruments for unilateral mistakes. The opinion of the court recognizes this rule. The complaint in terms erroneously asks for reformation of the lease by

striking out the clause for extension. The plaintiff, strictly speaking, is not entitled to the particular form of relief he asks for, because the defendant did not by signing the lease returned to him agree to a lease without the extension. But the fact is proved and found by the court that entitles plaintiff to rescission of the lease signed by him. Striking from that lease the provision for extension and letting the lease stand as so changed, affords the plaintiff precisely the same relief that he would have were the lease declared canceled and the defendant adjudged to have the right to hold the premises for the extended term provided for by the original lease. Strictly speaking, that is the relief that should have been adjudged. But the error of decreeing reformation instead of rescission did not affect the substantial rights of the defendant, and under sec. 274.37, Stats., the judgment should be affirmed.

There would seem to be no more need to cite authorities in support of the above than to cite the multiplication table to support the statement that once one is one. However there is ample authority for the proposition that rescission or cancellation will be granted for a unilateral mistake. See 9 Corp. Jur. p. 1168, note 74; 21 Corp. Jur. p. 88, note 49. Of the cases there cited the following directly support the proposition: *Fleischer v. McGehee,* 111 Ark. 626, 163 S. W. 169; *Moffett v. Rochester,* 82 Fed. 255; *Wirsching v. Grand Lodge, etc.* 67 N. J. Eq. 711, 56 Atl. 713, 63 Atl. 1119; *Smith v. Mackin,* 4 Lans. (N. Y.) 41; *Crowe v. Lewin,* 95 N. Y. 423; *Frazer v. State Bank,* 101 Ark. 135, 141 S. W. 941; *Morgan v. Owens,* 228 Ill. 598, 81 N. E. 1135; *Dzuris v. Pierce,* 216 Mass. 132, 103 N. E. 296; *Werner v. Rawson,* 89 Ga. 619, 15 S. E. 813; *Diman v. Providence, W. & B. R. Co.* 5 R. I. 130. The court may properly, as condition of granting the relief of rescission, require plaintiff to give to the defendant the option to take such a lease as the plaintiff intended to sign, as was in effect done in *Brown v. Lamphear,* 35 Vt. 252; *Paget v. Marshall,* L. R.

28 Ch. Div. 255; *Keene v. Demelman,* 172 Mass. 17, 51 N. E. 188. But here there is no need to do even that, as adjudication that the defendant has the right to hold under the original lease for the extended period would satisfy all requirements of equity.

The opinion of the court to support the lease signed by plaintiff invokes the rule that no consideration is necessary to uphold modification of a contract. It is true that the original consideration would support modification of the original lease as evidenced by the lease signed by plaintiff, if plaintiff had agreed to the modification so evidenced. But he did not agree to such modification. The trial court so found upon ample evidence. The rule invoked therefore has no application.

Mere inadvertence in signing the wrong lease is not such negligence as should bar plaintiff from relief. Almost every mistake involves some negligence. One using due care does not ordinarily make mistakes. Unless the mistake induces the other party to take some steps to his prejudice that he would not otherwise have taken, there is no good reason why relief should not be granted. Where no one is injured by a mistake except the party making it, and no one has changed his position in consequence of it, relief may be granted although a high degree of care was not exercised. See 21 Corp. Jur. p. 90. But in this case the plaintiff's mistake was excusable. The trial court found that the plaintiff cannot read English and on receipt of the two leases went to his lawyer for advice. The lawyer advised him that he was not bound to sign the lease with the extension but should sign the other, and by mistake inserted the date in the wrong lease and gave it to plaintiff to sign and send to defendant. A court of equity must, under the circumstances here involved, grant relief from a mistake so happening; else it is not a court of equity.

It does not at all detract from the force of the above to quote the maxim "Equity follows the law." Even the law

gives adequate relief from mistakes less excusable than the one here involved; as where it refunds money paid to secure compliance with a bid for public work from which items are inadvertently omitted in making the estimate. *Gavahan v. Shorewood,* 200 Wis. 429, 228 N. W. 497.

I am authorized to state that Mr. Justice STEVENS concurs in this dissent.

A motion by the respondent for a rehearing was granted, and the cause was reargued.

*Walter Schinz, Jr.,* attorney, and *Joseph F. Schoendorf* of counsel, both of Milwaukee, for the appellant.

For the respondent there was a brief by *Hugo Trost* of Milwaukee, attorney, and *William R. McCaul* of Tomah and *Goggins, Brazeau & Graves* of Wisconsin Rapids of counsel, and oral argument by *R. B. Graves.*

The following opinion was filed December 9, 1930:

FOWLER, J. On motion for rehearing reargument was ordered. On reconsideration we are of opinion that the rule under the Wisconsin cases, and very generally in other jurisdictions, is contrary to the views expressed in the original opinion of the court. A dissenting opinion was filed by the writer, in which Mr. Justice STEVENS concurred. No statement of facts in addition to the statements of the opinions first filed is deemed necessary for the purposes of this opinion. But it is considered that further elucidation of the position of the court should be made in view of the very inadequate treatment of the subject in the dissenting opinion.

An exhaustive note on the jurisdiction of equity to rescind instruments for unilateral mistakes is given in 59 A. L. R. 809. It is there said:

"Equitable relief from a mutual mistake is frequently given by a reformation of the contract. But a contract will

not be reformed for an unilateral mistake. Equitable relief may, however, be given from an unilateral mistake by a rescission of the contract. Essential conditions to such relief are: (1) The mistake must be of so grave a consequence that to enforce the contract as actually made would be unconscionable. (2) The matter as to which the mistake was made must relate to a material feature of the contract. (3) Generally the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake. (4) It must be possible to give relief by way of rescission without serious prejudice to the other party except the loss of his bargain. In other words, it must be possible to put him *in statu quo*."

Cases in support of the text are there cited and stated from eighteen states, including Wisconsin, and England. It is not considered necessary to refer more particularly to cases in other jurisdictions, but it is deemed that the Wisconsin cases should be gone into somewhat in detail as in our view they settle the question involved for this jurisdiction.

The Wisconsin case cited in support of the text in the A. L. R. note above cited is *Chicago, St. P., M. & O. R. Co. v. Washburn Land Co.* 165 Wis. 125, 161 N. W. 358. The action was for rescission of a quitclaim deed given under the mistaken idea of the company that it did not own land covered by a tax deed involved in a suit to quiet title in which the company was defendant. It is said in the opinion (p. 133):

"It is well settled that equity, in a proper case, will relieve against mistake. The instant case is not one of settlement or compromise of a disputed right or claim. It is a clear case of mistake, and a mistake on the part of the plaintiff here which is excusable. It is not necessary that fraud be shown. Nor is it necessary that the mistake be mutual in all cases. In order to reform a contract on the ground of mistake the general rule is that the mistake must be mutual, or mistake on one side and fraud on the other.

But where one deeds his property to another without consideration through mistake, equity will, in a proper case, grant relief by rescission. 9 Cyc. 394; *Clemens v. Clemens,* 28 Wis. 637; *Hurd v. Hall,* 12 Wis. 112; *Johnson v. Parker,* 34 Wis. 596; *Rider v. Powell,* 28 N. Y. 510; *Smith v. Mackin,* 4 Lans. (N. Y.) 41; 1 Story, Eq. Jur. (12th ed.) § 138*i*."

*Woldenberg v. Riphan,* 166 Wis. 433, 166 N. W. 21, was an action for specific performance. The defendant counterclaimed for cancellation on ground of his (unilateral) mistake in thinking the instrument signed gave him five days in which to accept or reject it, whereas it was an absolute agreement operative at its date. The trial court denied cancellation and granted specific performance. The judgment was reversed. The opinion by Mr. Justice ROSENBERRY closes as follows:

"The trial court has found that the proposition was signed under a mistake of fact and that defendant acted within the time in which he supposed he was to act. The rights of third parties not having intervened, we are of the opinion that within established principles specific performance of the contract in question should be denied and the purported agreement canceled."

*Stimpson v. Stimpson,* 168 Wis. 146, 169 N. W. 295, was an action brought to cancel a stipulation for probate of a will on allegations that the signature of plaintiffs was induced by misrepresentation of the facts, which were charged as fraudulent. The misrepresentation was not made intentionally, nor was it made by the party adverse to plaintiffs, although it was made by an attorney representing the proponent, the executor named in the will, who took it upon himself to procure the signatures with the approval, if not the direction, of the attorney of the party adverse to plaintiffs. This court treated the case as one for cancellation on the ground of unilateral mistake. The opinion states:

"An application for cancellation of a contract is addressed to the sound discretion of a court of equity. Intentional

fraud is not an essential. Substantial mistake on the part of the party seeking relief may be sufficient if such course is in accordance with established rules of equity and seems reasonable and just to the court in view of all the circumstances of the case. *Woldenberg v. Riphan,* 166 Wis. 433, 166 N. W. 21."

In *De Voin v. De Voin,* 76 Wis. 66, 44 N. W. 839, one partner bought out another and their contract was reduced to a writing which recited that the purchaser was to assume the partnership debts, the amount of which was not stated, and pay the seller a specified amount. The purchaser had himself made an inventory, in absence of the seller, and in footing up the debts had made a mistake by which the debts were footed $1,000 less than they were, and as the purchase price was based on the excess of assets over liabilities, the mistake made the purchaser's payment $500 too much. On discovering the mistake he brought action for money had and received for recovery of the $500. This court reversed the case for determination whether defendant had promised to repay the $500. In so doing the opinion states (p. 70) :

"We strongly incline to the opinion that, whether the mistake was or was not mutual, the only remedy of plaintiff was promptly to rescind the contract, or institute appropriate proceedings to that end. If the mistake was not mutual— that is, if the plaintiff entered into the contract on the basis of actual indebtedness of the firm and the defendant entered into it without any reference thereto—the minds of the parties did not meet as respects that important element in their contract. This also is a valid ground for the cancellation of the contract in equity. 2 Pom. Eq. Jur. § 870, and cases cited; 1 Story, Eq. Jur. § 144.

"The rule on the subject is thus stated by Mr. Pomeroy: 'Cancellation is appropriate when there is an apparently valid written agreement or transaction embodied in writing, while in fact, by reason of a mistake of both or one of the parties, either no agreement at all has really been made, since the minds of both parties have failed to meet upon the same matters, or else the agreement or transaction is different,

with respect to its subject matter or terms, from that which was intended.' "

In *Clemens v. Clemens,* 28 Wis. 637, eighty acres of land had been conveyed by a father to his son with intent to defraud creditors. In it was included the father's homestead forty. The father brought action against the son to compel a reconveyance on the grounds that the son included the homestead in fraud of the father and that the father conveyed the homestead under the mistaken belief that the deed conveyed only the other forty. The court says (p. 644): "That there was, so far as the plaintiff was concerned, at least a mistake on his part, is very clearly shown in proof. He did not intend to convey the east forty. . . ."

In the next paragraph is the question: "Is the plaintiff, then, precluded from claiming the assistance of equity to correct the mistake, considering it as such on his part?" The court answered the question by compelling reconveyance of the homestead.

The judgment of the circuit court should be modified and judgment of cancellation entered upon condition that the plaintiff execute and file with the clerk of the court for the defendant a lease in form and terms of the lease he intended to sign and deliver. This will restore the *status quo* and place the parties in the precise situation they would have been had the mistake not been made.

The appellant should recover his costs.

*By the Court.*—The original mandate is vacated and the cause remanded with directions to modify the judgment as indicated in this opinion.

Fritz, J., dissents.